IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**JANICE L. HOUCK,**

    **Plaintiff,**

vs.                                       CASE NO. 1:07cv37-MP/WCS

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. Loc. R. 72.2(D).  It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

Plaintiff, Janice L. Houck, applied for supplemental security income benefits. Plaintiff was 48 years old at the time of the administrative decision, had an 8th grade education, and had past relevant work as a certified nurse assistant and as a cashier

and stock clerk in a convenience store.  Plaintiff alleges disability due to pain in her back, hips, legs, and feet.

The Administrative Law Judge found that Plaintiff had the residual functional capacity to perform a limited range of light work.  R. 21.  He determined that she can lift or carry 10 pounds frequently and 20 pounds occasionally, can sit or stand throughout an 8 hour day in one hour cycles, can occasionally bend, crouch, kneel, stoop, squat, and crawl, but must avoid ladders or unprotected heights, heavy moving machinery, unusual stress, repetitive grasping, and twisting of the neck.  *Id.*  He determined that due to limitations for standing and walking, Plaintiff cannot do her past relevant work. R. 23.  He found that Plaintiff had the residual functional capacity, however, to perform light work as a survey worker, folding machine operator, and mail clerk.  R. 24.  Thus, the ALJ concluded that Plaintiff was not disabled as defined by Social Security law. Plaintiff contends that the ALJ erred in failing to give substantial credit to her subjective testimony as to the degree of pain she experiences.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir.

2002).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do her previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must

be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy.  Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Evidence from the Administrative Hearing**

Plaintiff was 48 years old at the time of the administrative hearing.  R. 477.  She has two children, ages nineteen and eight.  *Id.*  She attended school to ninth grade.  *Id.*

Plaintiff said she last worked in 1997 or 1998. R. 478. She said that her medical condition prevented her from standing, and therefore she no longer could do her past work. R. 478-479. She said she stopped working as a certified nursing assistant to care for children at home. R 481.

Plaintiff said that her feet "go numb" when she stands for a period of time, and she had problems with falling. R. 486. She had been referred to a neurologist for the numbness in her feet. R. 487. Plaintiff said her hands would swell, and she had trouble holding or picking up an object. R. 487-488. She said that the swelling in her feet impedes her ability to walk. R. 488. She said her doctor told her to stay off her feet. *Id.*

Plaintiff said that if she stood for 45 minutes, she would feel a weakness in her back and legs. R. 488. She said she could walk only the length of her home, a distance of 52 feet. R. 489.

Plaintiff said she had pain in her lower back and in her legs, worse on the left side. R. 489. She said that after sitting for 45 minutes, she experiences "a lot of pain" in her hip and lower back, and her left leg is numb. R. 489-490. She thought that she could sit and stand, alternatively, for just a few hours. R. 490.

She said she took over-the-counter pain medications, and took hydrocodone as needed. R. 480. She experienced dizziness, drowsiness, sleeplessness, slurred speech, and vomiting from medications. *Id.* These symptoms, she said, occurred every day lasting all day. R. 490.

Plaintiff said during the day, she does housework and tends to her children to fill her time. R. 482. She cooks, washes dishes, does laundry, makes beds, vacuums, sweeps, and mops. R. 482-483. She also reads one or two hours a day, and watches

television for one or two hours a day.  R. 483.  She also uses a computer about an hour a day.  *Id.*  She also helps her child with homework for about an hour a day.  R. 484.  She is able to bathe and dress herself.  R. 485-486.  Later in her testimony, Plaintiff said that she had to do house work in stages because her back, legs, and feet would begin to hurt.  R. 493.  She thought that the heaviest object she could pick up would be a gallon of milk.  *Id.*

Plaintiff testified that she did grocery shopping about twice a month, and went to church about once a month.  R. 484-485.  Friends and relatives visited her every weekend.  R. 485.  She said that she drove once a week to the doctor or to the store, a round trip of about 20 miles.  *Id.*  She said, however, that "all the time" she felt like not going out or being around other people.  R. 491.

**Medical Evidence**[1]

Plaintiff had an x-ray of her left knee on April 20, 1998.  James A. Johnson, III, M.D., determined from these x-rays:

> No definite bony abnormalities are seen.  There is mild narrowing of the medical joint compartment.  The other two compartments are unremarkable.

R. 138.  His conclusion was joint effusion[2] and mild degenerative changes of the left knee.  Plaintiff had an MRI of her left knee on May 18, 1998.  M. Stein, M.D., found that the examination was "abnormal."  R. 131.  He said that the findings were "consistent

---

[1] Medical terms come from DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, available at: http://www.mercksource.com (Medical Dictionary link).

[2] Effusion is the escape of fluid into a part or tissue, as an exudation or a transudation.   DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

with tear of the posterior horn of the medial meniscus with abnormal signal appearing to contact the inferior articular surface."  *Id.*  There was evidence of "bony contusion involving the posterior tibia plateau," and he found this to be usually associated with a torn ACL.  *Id.*  There was "small joint effusion."  *Id.*  Otherwise, the study was unremarkable.  *Id.*

Spinal x-rays were taken on June 7, 2000.  R. 314.  Plaintiff's lumbar spine revealed "a mild degree of increased kyphosis of the thoraco-lumbar junction."  *Id.*  The lumbar alignment and pedicles were intact, and the vertebral bodies and posterior elements were normal.  *Id.*  The conclusion was a slight increase kyphosis of the thoraco-lumbar spine, with no fractures.  *Id.*  The views of the cervical spine revealed mild degenerative changes, with no fractures.  *Id.*  There were mild degenerative changes at C5-6 and C6-7, and mild narrowing at C5-6, C6-7, and C7-T1 foramina bilaterally, and mild narrowing of the C5-6 and C6-7 interspaces.  *Id.*

An x-ray dated March 13, 2001, of Plaintiff's left hip revealed "a small bony fragment adjacent to the lesser trochanter."  R. 309.  A "partial avulsion fracture of the lesser trochanter" was suspected.  *Id.*

On March 14, 2001, Plaintiff reported that in February, 2001, she fell.  R. 310.  She came in to check whether her hip was cracked.  *Id.*  Her weight was not taken due to her expressed pain level.  *Id.*  However, perhaps in contradiction to that last notation, it was observed that she was generally well-dressed, ambulating in high heel shoes, and was without acute pain.  *Id.*  She was given an orthopedic referral.  *Id.*

Plaintiff had an x-ray of her right ankle on May 15, 2002.  R. 346.  No abnormalities were found.  *Id.*  On May 6, 2002, no tenderness of the ankle was found on examination.  R. 351.

Plaintiff was seen by Ms. Emery on May 5, 2003.  She said she had fallen on May 1st and hurt her back.  R. 439.  After a visit to the emergency room, her feet were still numb and tingling.  *Id.*  Upon examination it was observed that Plaintiff did not walk with a limp, and she sat and stood without apparent difficulty.  *Id.*  Ms. Emery noted no neurovascular or neuromuscular deficits.  *Id.*  Plaintiff said that she had "lower extremity involvement," but there was no inflammation in the lower lumbar spine.  *Id.*  The assessment was lumbago and gastritis.  *Id.*  The same negative findings upon examination were repeated on May 28, 2003, by Nurse Emery.  R. 438.

The diagnosis of lumbago was continued on June 24, 2003, with no objective findings.  R. 437.  Plaintiff complained that day of lower back pain.  *Id.*  Nurse Emery noted that the x-rays showed "mild degenerative spondolysis [spondylosis[3]], no acute bony injuries."  *Id.*

On July 16, 2003, Plaintiff saw Nurse Emery for another health problem.  R. 436.  Back and foot pain was not mentioned.  *Id.*

On September 9, 2003, Ms. Emery saw Plaintiff.  R. 435.  Plaintiff complained of back, stomach, and left elbow pain.  *Id.*  She said she had "cracked" her left elbow six weeks earlier.  *Id.*  Ms. Emery said that Plaintiff had no local inflammation in the lower

---

[3] Spondylosis is the ankylosis of a vertebral joint or degenerative spinal changes due to osteoarthritis.  Ankylosis is the immobility and consolidation of a joint due to disease, injury, or surgical procedure.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

back, no inflammation of a major joint, and there was "no lower extremity involvement." *Id*.

Plaintiff was seen by Nurse Emery on December 4, 2003. R. 433. She complained of pain in her lower back, left hip, and bilaterally in her legs. *Id*. She did not ambulate with a limp, did not sit or stand as if she were in significant discomfort, had no joint inflammation, and moved well in all extremities without lower extremity edema. *Id*.

Nurse Emery saw Plaintiff again on December 22, 2003. R. 432. She complained of worsening left hip and leg pain. *Id*. The same negative findings were made. *Id*. She did not sit or stand with discomfort, and there was no local inflammation. *Id*.

Ms. Emery again saw Plaintiff on January 22, 2004. R. 430. Plaintiff said her legs were not getting any better. *Id*. No significant signs were noted. *Id*.

On April 7, 2004, Plaintiff was seen by Ghulam Mohammed, M.D., with complaints of pain in her hips and chest, headache, and weakness. R. 249. On examination, Dr. Mohammed found nothing wrong with Plaintiff's chest. *Id*. Also, there was no edema of Plaintiff's extremities. *Id*.

Plaintiff was seen again in Dr. Mohammed's office by Dr. Brett Perkins on May 28, 2004. R. 428. She said that her ankles and fingers had been having pain "and what she describes as itching on the skin." R. 428. Physical examination revealed full range of motion of all joints of the fingers. *Id*. Her lower extremities had good range of motion, with no ulcerations. *Id*. Dr. Mohammed speculated that the pain that was reported was "maybe arthritic in nature, possible related to psoriasis." *Id*.

Plaintiff was seen again in Dr. Mohammed's office on June 10, 2004, by Nurse Emery. R. 426-427. She complained of bilateral pain in her hands and feet. R. 426. Ms. Emery noted full range of motion and no edema of the lower extremity. *Id*. The assessment was arthritis with bilateral feet pain. R. 427.

Ms. Emery again saw Plaintiff on February 8, 2005. R. 424-425. She still complained of "problems with her feet and also having headaches." R. 424. "All the x-ray and everything are negative for spurs" noted Ms. Emery. *Id*. There was no decrease in range of motion of the lower extremity. *Id*. The assessment by Ms. Emery was bilateral neuropathy of the feet. R. 425. Ms. Emery said that Plaintiff "is very noncompliant about returning to the office[;] this is the first time she has been here since June of 2004." *Id.*

Plaintiff returned on June 14, 2005, and was seen by Dr. Mohammed. R. 423. She complained of

> generalized aches, generalized weakness, and episodes of chest pain. She stated that she sometimes has so much pain in the feet in the morning that she cannot get up. She also gave a history of dizzy spells. She also stated that she has pain as well as weakness in both lower extremities as well as the lower back.

R. 423. Upon examination, Dr. Mohammed found no acute inflammation of the joints or spine, and no leg edema. *Id*. He concluded that Plaintiff had "multiple vague complaints. Cannot rule out anxiety/depression." *Id*. He referred Plaintiff to a rheumatologist and a cardiologist. *Id.*

Plaintiff was seen again by Dr. Mohammed on July 22, 2005. R. 421-422. She complained of pain in the bottom of her feet and "also gave a vague history of pain in

the right arm on occasion." R. 421. He said she was "somewhat vague about pain in the right upper extremity." *Id.* Upon examination, Dr. Mohammed found:

> She had good ROM [range of motion] over all extremities including [the] right upper extremity. She had no signs of acute inflammation or acute neurological deficit on examination of the upper and lower extremities. Examination of spine and joints did not show any signs of acute inflammation. She had no acute inflammation or infection over the bottom of her feet.

R. 421. Dr. Mohammed said it was unclear what was causing the pain in the bottom of Plaintiff's feet. R. 422. She was encouraged to continue to see her foot physician, Dr. Reynolds. *Id.*

**Legal Analysis**

Plaintiff contends that the Administrative Law Judge improperly discounted Plaintiff's testimony concerning the degree of her impairments.

Pain and other symptoms reasonably attributed to a medically determinable impairment are relevant evidence for determining residual functional capacity. Social Security Ruling 96-8p, p. 4. Pain and other symptoms may affect either exertional or non-exertional capacity, or both. *Id.*, p. 6.

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *See Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). The reasons articulated for disregarding the claimant's subjective pain testimony must be based upon substantial evidence. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991). It is not necessary that the ALJ expressly identify this circuit's pain standard if his findings "leave no doubt as to the appropriate result" under the law. Landry v. Heckler, 782 F.2d 1551, 1553-1554 (11th Cir. 1986).

The Administrative Law Judge determined that Plaintiff's testimony as to the intensity, duration, and limiting effects of her symptoms was not entirely credible. R. 22. He reasoned that none of Plaintiff's treating physicians enumerated any permanent work-related limitations, and she was encouraged to lose weight and to exercise. Id. He found that Dr. Mohammed specifically noted in 2003 and 2004 that Plaintiff's physical examinations were "unremarkable." Id. "On December 4, 2003, he noted that the claimant did not ambulate with a limp, and she did not sit or stand as if she was in a significant amount of discomfort." Id. Likewise in May and June of 2005, Dr. Mohammed described the claimant's symptoms as only 'mild to moderate.' " Id. The ALJ further noted that "radiological" studies showed only mild degenerative changes in the cervical and lumbar spine, and "her left elbow and hip fractures apparently healed without complication." Id.

All of these findings are supported by substantial evidence in the record set forth above. While some of the observations were by Nurse Emery rather than a treating physician, there still is little objective evidence of physical abnormality to support Plaintiff's testimony.

The ALJ further declined to credit Plaintiff due to the extent of her daily activities. R. 23.  He found:

> Further, the claimant's reported activities of daily living are highly functional and compatible with the performance of competitive work on a sustained basis.  She bathes, dresses, and feeds herself, and performs extensive childcare on a daily basis.  She is single and manages her own household.  She cooks meals, cleans the house, and does other household chores.  She drives regularly to the store and to the doctor's office.  She assists her children with their homework.  She enjoys watching television, reading, and visiting with others, and she utilizes a personal computer.

*Id.*  Again, these findings are fully supported by substantial evidence in the record. While in some cases the reported activities of daily living are not substantial evidence to discount subjective testimony, either because qualified by the claimant or not carried out for a full 8 hour day,[4] the evidence in this case of daily activities is substantial evidence to support the ALJ's credibility conclusion, especially since there is such a significant lack of medical evidence.

**Conclusion**

---

[4] Ross v. Apfel, 218 F.3d 844, 849 (8th Cir. 2000) ("The ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work."); Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (the court must consider the entire record when determining whether the evidence of a claimant's daily activities is substantial evidence for the conclusion that she retains the residual functional capacity to work); Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997) ("Nor do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability or is inconsistent with the limitations recommended by Lewis's treating physicians."); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (when considering daily activities, the entire record must be considered, including the claimant's testimony that she had to lie down after two hours of such work); Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (a conclusory citation to a claimant's "daily activities" as a basis for failing to believe her testimony as to pain was insufficient where there was a medical condition that reasonably could have given rise to the pain described, and, although she testified that she cooked and shopped for herself, she had trouble putting on her clothing).

Considering the record as a whole, the findings of the Administrative Law Judge correctly followed the law in his assessment of the credibility of Plaintiff's testimony, and are based upon substantial evidence in the record.  The decision of the Commissioner should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on October 30, 2007.

s/ William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**